# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Mark Hanson, | Civil No. 09-1034 (DWF/RLE) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Randolph E. Stefanson, and Stefanson, Plambeck, Foss & Fisher, | |
| Defendants. | |

___

Richard I. Diamond, Esq., Richard I. Diamond, PA, counsel for Plaintiff.

Jan M. Gunderson, Esq., Jeffrey R. Mulder, Esq., and Matthew J. Mahoney, Esq., Bassford Remele, PA, counsel for Defendants.
___

## INTRODUCTION

This matter is before the Court upon the Motion for Summary Judgment brought by Defendants Randolph E. Stefanson and Stefanson, Plambeck, Foss & Fisher. For the reasons set forth below, the Court grants Defendants' motion.[1]

## BACKGROUND

Plaintiff Hanson was the police chief in Hawley, Minnesota, from 1991 until 2005. In 2004, the City of Hawley (the "City") elected a new mayor. In 2005, the City adopted

---

[1] Defendants request that the Court strike untimely exhibits submitted by Hanson. The Court declines Defendants' request but notes that the consideration of the exhibits will not affect the ultimate disposition of this case.

a "zero tolerance" policy in regards to alcohol consumption by on-call city employees. (Aff. of Jan M. Gunderson ("Gunderson Aff.") ¶ 19, Ex. 18 (the "Zero Tolerance Policy")). The Zero Tolerance Policy reads in relevant part:

> Any employee who is designated as on-call shall not consume any alcohol, alcoholic beverages, drugs or controlled substances, except as may be prescribed by a medical doctor.

(Zero Tolerance Policy at 11, ¶ T.) In addition, the City Police Department governs alcohol use by its employees. For example, the City Police Department has a policy that provides that no employee will be unfit for scheduled duty because of excessive use of intoxicants and another policy that provides that no officer should consume alcoholic beverages within 4 (four) hours before reporting for scheduled duty. (Gunderson Aff. ¶ 10, Ex. 9 (Report of Lt. Stewart J. Wirth (Ret.) ("Wirth Report")) at 21.)

On May 24, 2005, Hanson was on-call beginning at 5:00 a.m. and on-duty at 8:00 a.m. (Gunderson Aff. ¶ 2, Ex. 1 (2007 Depo. of Mark Hanson ("2007 Hanson Depo.")) at 23.) While driving a city vehicle, Hanson was involved in a minor traffic accident at approximately 8:20 a.m. in front of the high school where he was scheduled to appear in a DARE (Drug Abuse Resistance Education) event at the school. (2007 Depo. of Mark Hanson at 22-23; ¶ 15, Ex. 14 (January 31, 2008 Trial Tr. from *Hanson v. City of Hawley*, Dist. Ct. File No. 14-CO-16-1891 ("Jan. 2008 Trial Tr.")) at 65, 121.) A deputy arrived at the scene and administered a preliminary breath test to Hanson, which registered a .024 blood alcohol content. (2007 Hanson Depo. at 27-28.) A complaint was brought against Hanson and an investigation ensued.

The City retained Lt. Stewart Wirth, a retired police officer, to conduct the investigation. (Gunderson Aff. ¶ 5, Ex. 4 (Depo. of Davis John Blakeway ("Blakeway Aff.")) at 15-16; ¶ 16, Ex. 15 (February 1, 2008 Trial Tr. from *Hanson v. City of Hawley*, Dist. Ct. File No. 14-CO-16-1891 ("Feb. 2008 Trial Tr.")) at 167-68.) During the investigation, Hanson initially asserted that he could not remember if he had been drinking the evening before and claimed that the alcohol in his system came from cough syrup that he ingested at 7:55 a.m. on the morning of the accident. (Wirth Report at 13-14.) Later in the interview, Hanson stated that he may have had "half a beer" the night before the accident. (*Id*. at 17.) Lieutenant Wirth ultimately recommended that the allegation of misconduct against Hanson be sustained. (*Id*. at 18-23.) Lieutenant Wirth's report was provided to the City of Hawley Personnel Committee ("Personnel Committee"), which met and considered the allegations of misconduct against Hanson. The Personnel Committee issued a report, finding in part that:

> Chief Mark Hanson's claim that the blood alcohol content of .024 at 9:00 a.m. on May 24, 2005, was due to ingestion of cough syrup lacks credibility and brings into question the honesty, truthfulness and integrity of Chief Mark Hanson.
>
> . . . .
>
> The Police Chief is a department head and has a position of responsibility. The Police Chief must set a high standard of personal integrity and conduct for his subordinate officers and, more importantly, to garner the respect and confidence of the citizens he is sworn to protect, serve and educate.
>
> . . . .
>
> Chief Mark Hanson violated the zero tolerance policy . . . .

3

> . . . .
>
> The violation of the above policies amounts to a breach of duty and misconduct, which affects the administration of the office of Police Chief of the City of Hawley which directly affects the rights and interests of the public.

(*Id*. ¶ 11, Ex. 10 (Report of Personnel Committee) at ¶¶ 12, 14, 21, 22.) The Personnel Committee recommended that Hanson's employment be terminated and explained:

> The City of Hawley demands a high standard of conduct of its Police Chief. A Police Chief who appears at a DARE competition at the public school at 8:00 a.m. with a blood alcohol content of .024, and who cannot remember when he last consumed alcohol, and claims the positive blood test is due to ingestion of cough syrup, is not fit or not the proper person for the office.

(*Id*. at ¶ 23.)

The City Council met on August 12, 2005. (Gunderson Aff. ¶ 12, Ex. 11.) At the time, the City Council members were Davis Blakeway, Stacey Riedberger, Kerri Anderson, Ted Dahl, and John Young, Jr. (*Id*.) The City Council received the Personnel Committee's recommendation to terminate Hanson due to misconduct, conducted a hearing, and unanimously voted to terminate Hanson for cause. (*Id*.) Hanson then requested a "Grievance Hearing" under the City's policy, which was held on August 19, 2005. The City Counsel again voted unanimously for Hanson's termination. Hanson appealed his termination to the Minnesota Court of Appeals, claiming that the City violated the Minnesota Drug and Alcohol Testing in the Workplace Act ("MDATWA") as well as the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). *Hanson v. City of Hawley*, No. A05-1940, 2006 WL 1148125 (Minn. Ct. App. May 2, 2006). The Court of Appeals upheld Hanson's termination. *Id*.

at *4. The Court of Appeals explained that the question of whether the City violated the ADA and MHRA was beyond the scope of its review. *Id.* at *3.

Represented by Defendant Stefanson, Hanson filed a new action in Minnesota state court. (Gunderson Aff. ¶ 18, Ex. 17.) Hanson asserted violations of the MDATWA, the ADA, the MHRA, and the Minnesota Governmental Data Practices Act. (*Id.*) The City filed a motion for summary judgment on all counts. The Clay County District Court granted summary judgment in favor of the City on Hanson's MDATWA claim, holding it was precluded under collateral estoppel. The Clay County District Court also granted summary judgment in favor of the City on Hanson's ADA and MHRA claims, holding that they were time-barred. Hanson brought this action against Defendants alleging legal malpractice with respect to the time-barred ADA and MHRA claims.

## DISCUSSION

Hanson alleges his termination was the result of disability discrimination in violation of the ADA and MHRA. Hanson now alleges that he could have established a *prima facie* case of discrimination but for his attorneys' failure to timely file an action. Defendants seek summary judgment as to Hanson's legal malpractice claims.

**I.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*

of Mo., 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Legal Malpractice

In his Verified Complaint, Hanson asserts claims for negligence, breach of fiduciary duty, and negligent supervision. Essentially, Hanson's claims are for legal malpractice. The elements of a legal malpractice claim are: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; [and] (4) that but for defendant's conduct, the plaintiff would have been successful in the prosecution or defenses of the action." *Jerry's Enters. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816, 819 (Minn. 2006). Defendants assert that Hanson cannot demonstrate

6

the fourth element—"but for" causation. Specifically, Defendants contend that Hanson's ADA and MHRA claims would not have survived summary judgment if they were timely-filed in the state court action.

Under the ADA and the MHRA an employer may not discharge an employee on the basis of the employee's disability. 42 U.S.C. § 12112(a); Minn. Stat. § 363A.08, subd. 2. Both the ADA and the MHRA disability discrimination claims are analyzed under the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *Burchett v. Target Corp.,* 340 F.3d 510, 516 (8th Cir. 2003); *see also Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 439 n.4 (explaining that federal precedent may be used to construe the MHRA). Under this analytical framework, the employee bears the initial burden of proving a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802. To make out a *prima facie* case of disability discrimination, Hanson must show that (1) he was disabled within the meaning of the ADA and the MHRA; (2) he was qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *McLain v. Andersen Corp.*, 567 F.3d 956, 967 (8th Cir. 2009). If the plaintiff makes out a *prima facie* case, the employer then has the burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. Finally, to prevail, the plaintiff must show that the defendant's proffered reason was a pretext for discrimination. *Id*.

Defendants argue that Hanson cannot make a *prima facie* case because he has failed to show that he has a disability under the applicable statutes. The ADA defines

"disability" with respect to an individual as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also* Minn. Stat. § 363A.03, subd. 12 ("A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.").

Hanson contends that he has raised a genuine factual issue on whether the City regarded him as having an impairment that materially limited his major life activities. While not entirely clear, it appears that Hanson asserts that the City regarded him as having an impairment that materially limited him from working. In order to show that one is substantially limited in working, a person must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Dovenmuehler*, 509 F.3d at 439. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Id*.

In support of his claim that the City regarded him as disabled due to alcoholism, Hanson points to several incidents over the years that Hanson claims show a pattern of alcohol abuse. Hanson asserts that he was known in the City as a "drunk" or an "alcoholic" and was considered to be so whether or not the perception was true. Hanson first points to a 1997 meeting Hanson had with City officials. The meeting followed a complaint that Hanson was drinking excessively after-hours on a golf course. (2009

8

Hanson Dep. 60-61.) During the meeting, Hanson claims he was advised to undergo an alcohol evaluation. (*Id.*) Hanson asserts that city administrator Tom Swenson and now-Councilman John Young were present. Second, in 2002, Hanson was called to the scene of a dead body. Clay County Sheriff Craig Baker lodged a complaint to the Mayor of Hawley, asserting that Hanson arrived at a police scene while under the influence of alcohol. (Jan. 31, 2008 Trial Tr. at 47-48.) The complaint was reviewed and no further action was taken. (*Id.* at 52.) Third, Hanson asserts that he admitted to being an alcoholic to a neighbor, who was also a former City Councilman and a current City employee. Similarly, Hanson asserts that he socialized with a City administrator, Tom Swenson, and that he told Swenson that he was an alcoholic. Hanson also asserts Lisa Jetwig, who he claims was his supervisor, called him into her office after the passage of the Zero Tolerance Policy and asked him never to call her at home drunk again. Hanson asserts that these incidents raise a triable issue of fact as to whether the City regarded Hanson as disabled due to alcoholism.

To prevail on a claim that he was regarded as disabled, Hanson must show (1) that the City believed Hanson could not perform a broad range of jobs; (2) that the City regarded the impairment to be permanent or long term; and (3) that the City perceived Hanson's alcoholism as limiting even though Hanson was capable of performing work. *McClain*, 567 F.3d at 968. Hanson fails to meet his burden of establishing a *prima facie* case of disability discrimination because he has not put forth facts that raise a genuine issue of material fact that the City Council regarded Hanson as disabled when they voted to terminate his employment or that he was terminated because of his disability.

9

Hanson asserts that he was perceived by the Hawley community as an alcoholic and that therefore the elected city officials presumably perceived him as an alcoholic as well. For example, Hanson asserts that he had conversations with certain residents of Hawley during which Hanson indicated that he was an alcoholic. These conversations were with a neighbor, who Hanson asserts is a current city employee and a former City Councilman, and Tom Swenson, a former City administrator. Hanson, however, does not offer any evidence connecting his neighbor's and Swenson's alleged knowledge of Hanson's problems with alcohol to the 2005 City Council that ultimately terminated him. Hanson has not alleged that he had any conversations with a member of the 2005 City Council during which he stated he was an alcoholic. Nor has he submitted admissible evidence to demonstrate that any 2005 City Councilperson regarded Hanson as disabled due to alcoholism.

Hanson does assert that 2005 City Councilperson John Young was at the 1997 meeting after the golf-course incident, during which Hanson asserts he was advised to seek an alcohol evaluation. Young, however, testified during his deposition that the only incident that the City Council considered when it voted to terminate Hanson's employment was the May 24, 2005 incident. (Gunderson Aff. ¶ 6, Ex. 5 (Depo. of John Young ("Young Depo.")) at 34-35.) The fact that Young may have been present at the 1997 meeting is not enough to raise a triable issue of fact as to the City's perception of Hanson as being disabled because Hanson has submitted no evidence connecting the 1997 meeting with the City Council's perception of Hanson in 2005.

Hanson has also failed to put forth facts sufficient to raise a triable issue of fact as to whether the City terminated Hanson because of his disability, which is an element of his *prima facie* case. Even if Hanson could establish on the current record that the City perceived him to be an alcoholic, he must also put forth admissible evidence that shows that the City terminated Hanson because of his perceived disability. The record demonstrates, however, that the City had a Zero Tolerance Policy for its employees, that Hanson was aware of the policy, and that Hanson consumed alcohol in violation of the policy. The record also demonstrates that the City terminated Hanson because he violated the Zero Tolerance Policy and because his claim that the ingestion of cough syrup caused the positive breath test was not credible. Hanson has failed to put forth admissible evidence to demonstrate that the City actually terminated him because the City regarded Hanson as an alcoholic.

Even if Hanson could establish a *prima facie* case, the City has proffered a legitimate, non-discriminatory reason for its decision to terminate Hanson—namely, the violation of the Zero Tolerance Policy. Hanson asserts that the City's passage of the Zero Tolerance Policy is suspect because there were no other City employees with a known potential alcohol abuse problem. Hanson also asserts that the complaint against him under the Zero Tolerance Policy was motivated by an intent to discriminate against Hanson and, in particular, that Major Blakeway held a personal grudge against Hanson and wanted to get Hanson fired. Hanson also asserts that during the investigation into the May 24, 2005 incident, Lieutenant Wirth also fleshed out Hanson's drinking history and suggests that this demonstrates discriminatory motive. Aside from general and

11

unsupported allegations of discriminatory intent, however, Hanson has failed to provide admissible evidence showing that his termination was pretextual. To survive a motion for summary judgment, Hanson may not rely on "mere allegations," but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

For the reasons stated above, Hanson has failed to establish a *prima facie* case of disability discrimination or to demonstrate that the City's decision to terminate Hanson was pretextual. Because Hanson's ADA and MHRA claims fail as a matter of law, so do Hanson's malpractice claims against Defendants.[2]

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. [24]) is **GRANTED**.

2. Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: May 28, 2010          s/Donovan W. Frank
                             DONOVAN W. FRANK
                             United States District Judge

---

[2] Defendants also request that the Court deem their Request for Admissions as admitted because Hanson failed to respond. The Court need not decide this issue because Hanson's claims fail even if the Request for Admissions are not deemed admitted.

12